# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| QAUMANIQ SUUQIINA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 3:08-0504 |
| v. | ) Judge Wiseman / Knowles |
| | ) |
| MICHAEL ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 11. Defendant has filed a Motion for Judgment on the Pleadings and supporting Memorandum of Law, which the Court will construe as a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry Nos. 13 and 14. Plaintiff has filed a Reply. Docket Entry No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

## I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on May 24, 2005, alleging that she had been disabled since February 28, 2005, due to systemic mastocytosis, "21 hydroxalase," adrenal hyperplasia, chronic fatigue syndrome, fibromyalgia, panic attacks, one bulging disc and one ruptured disc in the neck. Docket Entry No. 9, Attachment ("TR") 58-60, 64, 72-74. Plaintiff subsequently amended her onset of disability date to November 9, 2004. Docket Entry No. 14; TR 17. Plaintiff's applications were denied both initially (TR 41-42, 45-49) and upon reconsideration (TR 43-44, 52-54). Plaintiff requested (TR 37) and received (TR 31-33) a hearing. Plaintiff's hearing was conducted on May 11, 2007, by Administrative Law Judge ("ALJ") Carman Graves. TR 339-369. Plaintiff and vocational expert ("VE") Kenneth Anchor, appeared and testified. *Id.*

On July 19, 2007, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 14-28. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 9, 2004, the amended alleged onset date of disability (20 CFR 404.1520(b), 4041571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mastocytosis, chronic fatigue syndrome, degenerative disc disease, celiac sprue disease, and panic disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

>   Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. The claimant has the residual functional capacity to perform the full range of light work which includes the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of 6 hours in an 8 hour workday; sit for a total of 6 hours in an 8 hour workday; frequently change position at will as needed; frequently climb, balance, kneel, crouch, crawl, stoop, push, pull, reach; and work in a clean environment. The claimant can understand and remember simple directions but may have mild difficulty recalling complex directions; can satisfactorily maintain concentration and persistence for extended periods despite occasional difficulties; can interact appropriately with the general public, supervisors, and coworkers; and can respond appropriately to routine changes in the work setting.
>
> 6. The claimant is capable of performing past relevant work as a scheduling clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 9, 2004, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 19-28.

On August 12, 2007, Plaintiff timely filed a request for review of the hearing decision. TR 12. On April 11, 2008, the Appeals Council issued a letter declining to review the case (TR 6-9), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

4

273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which

5

> significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that: 1) "The ALJ erred in discrediting the testimony of the Plaintiff's treating physician, Dr. Sally Burbank"; 2) "The ALJ erred in discrediting the testimony of the Plaintiff"; 3) "The ALJ erred in ignoring the testimony of the vocational expert (VE) regarding the Plaintiff's inability to work"; and 4) "The Appeals Council erred in upholding the decision of the ALJ." Docket Entry No. 12. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*

7

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. Weight Accorded to the Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ erroneously disregarded the opinion of Dr. Sally Burbank, her treating physician, because of "too many inconsistencies." Docket Entry No. 12. Plaintiff acknowledges that Dr. Burbank's opinion contained inconsistencies, but argues that those inconsistencies were addressed and clarified by Dr. Burbank in her May 17, 2007 letter. *Id.* Although Dr. Burbank had initially opined in her March 2007 letter that Plaintiff's impairments were caused, *inter alia*, by thyroid cancer and a ruptured disc in her back, she stated in her letter of May 17, 2007, that "[t]he real cause of patient's long term disability however, is not her back problem or thyroid nodule," but "is her severe mastocytosis and CFS." *Id., citing* TR 183 and *quoting* TR 327.[2] Plaintiff essentially contends that because Dr. Burbank "clarified" the cause of Plaintiff's impairments in her May 2007 letter, her opinion should be accorded controlling weight. *Id.*

Defendant responds that the ALJ properly discounted Dr. Burbank's opinion because it was unsupported by, and inconsistent with, the Record. Docket Entry No. 14. Defendant notes that Dr. Burbank unambiguously stated that Plaintiff had thyroid cancer in a letter written March 9, 2007, but then stated that Plaintiff did not have thyroid cancer in her May 17, 2007 letter. *Id.*

---

[2]In fact, Dr. Burbank's May 17, 2007 letter acknowledged that Plaintiff had neither thyroid cancer, nor a herniated disc. TR 327; *compare with* TR 183; 186.

8

Defendant asserts that the test results that Dr. Burbank relied upon to diagnose Plaintiff with thyroid cancer were inconclusive and should not have been relied upon because, at that point, "no physician or laboratory report had yet confirmed that plaintiff had cancer." *Id.*

Defendant further argues that Dr. Burbank's May 2007 letter also retracted "a second assessment about plaintiff's health" regarding a ruptured disc in her back. *Id., citing* TR 327. Defendant notes that Dr. Burbank, in a December 2005 medical assessment form, indicated that Plaintiff was "physically limited due, in part, to a ruptured disc." *Id., citing* TR 186. Defendant notes that, in her May 2007 letter, however, "Dr. Burbank acknowledged...that plaintiff did not, in fact, have a herniated disc." *Id.* Defendant further notes that "at least part of" Dr. Burbank's initial diagnosis that Plaintiff had a herniated disc was based upon anecdotal evidence rather than on Dr. Burbank's observation of Plaintiff or medical reports. *Id.*

Defendant argues that Dr. Burbank's opinions are not "well-supported by medically acceptable clinical and laboratory techniques" or the evidence of Record as a whole, and therefore that the ALJ properly did not accord her opinion controlling weight. *Id.* Defendant points to other statements in Dr. Burbank's May 2007 "clarification" letter that undermine her previous opinions. Specifically, Defendant argues that, while retracting her opinion that Plaintiff had a herniated disc, Dr. Burbank opined that Plaintiff's degenerative disc disease caused her disabling back pain and substantially limited her physical abilities. *Id., citing* TR 327. Dr. Burbank also opined that Plaintiff's back pain could be controlled with anti-inflammatory medications and back rest. *Id.* Defendant also argues that Dr. Burbank's "treating notes and records" do not indicate that Plaintiff was "significantly restricted in performing physical activities" as a result of any of the impairments that she alleged. *Id.*

9

Regarding Dr. Burbank's opinion that the "real cause" of Plaintiff's disability was not her back problem or thyroid nodule, but her severe mastocytosis and chronic fatigue syndrome, Defendant notes that Dr. Burbank, in December 2005, opined that Plaintiff was limited in lifting/carrying, standing/walking, sitting, postural functions, and other physical functions because of back issues. *Id., citing* TR 186-187. Dr. Burbank did not refer to any clinical or laboratory reports supporting her opinions regarding the degree of Plaintiff's physical limitations resulting from mastocytosis or chronic fatigue syndrome. In fact, in March 2001, Dr. Burbank reported that, although Plaintiff had had some "masto flares," she was "doing OK." *Id.*, *citing* TR 209. In February 2003, Dr. Burbank reported that medications helped lower Plaintiff's stress and prevent flare-ups of mastocytosis. *Id., citing* TR 206. In November 2004, Dr. Burbank noted that Plaintiff was exercising two to three times per week. *Id., citing* TR 203.

Defendant also cites further evidence to undermine Dr. Burbank's findings. *Id.* Specifically, Defendant argues that records indicate that Plaintiff walked normally, had a normal gait, and experienced only mild tenderness in her shoulders and lower back (TR 149-152); that Plaintiff reported that she had not experienced any recent chest pain because of her mastocytosis and that she walked two miles three to four times per week (TR 310); and that Dr. Wierum observed that Plaintiff had no chest pain, no back pain, no joint pain, and no muscular pain or weakness (TR 318). Defendant also argues that medical imaging fails to support Dr. Burbank's assessments. *Id., citing* TR 134, 139-140, 208. Defendant finally notes that, although Plaintiff has reportedly suffered from mastocytosis and chronic fatigue syndrome since the early to mid 1990's, she continued to work from 1999-2004. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing

11

treatment relationship with you.

20 C.F.R. § 404.1502.

The ALJ, in the case at bar, specifically articulated her reasons for discounting Dr. Burbank's opinion. TR 26. The ALJ did not give great weight to Dr. Burbank's opinion because there were "too many inconsistencies" with her assessments that she attempted to clarify in her May 2007 letter. *Id.* The ALJ explained:

> Dr. Burbank first reported that the claimant had thyroid cancer and a herniated disc. She later corrected this statement to reflect that the claimant did not have thyroid cancer and that she did not have a herniated disc but rather degenerative disc disease. Dr. Burbank stated that back pain precluded the claimant from doing any kind of manual labor but then stated that back pain was controlled with anti-inflammatory medications, Motrin, and rest. No surgical intervention has been recommended. Dr. Burbank's statements regarding the severity of mastocytosis and chronic fatigue are not supported by her treatment records or the record as a whole. There were reports that the claimant was doing okay and had mild fatigue. Severity of mastocytosis was rated as a 5 on a scale of 0 to 10 indicating only moderate symptoms. The claimant exercised 2 to 3 times a week and denied feeling severely depressed. Cardiac workup was negative.

*Id.*

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* As illustrated in the quoted passage above, Dr. Burbank's opinion is contradicted by other evidence of Record. Accordingly, the ALJ was not bound to accord her opinion controlling weight. Plaintiff's argument fails.

12

## 2. Weight Given to Plaintiff's Testimony

Plaintiff argues that the ALJ erroneously discredited her testimony because of "several inconsistencies" in that testimony. Docket Entry No. 12. Plaintiff references a letter she wrote subsequent to the ALJ's ruling that addressed her perceived "inaccuracies in the opinion." *Id., referencing* TR 330-335. Plaintiff contends that the letter explained her testimony and served to clarify the alleged inconsistencies of that testimony. *Id.*

Defendant responds that Plaintiff's argument fails because she did not articulate specifically how the ALJ erred in discrediting her testimony, as is required to satisfy her burden of proof of disability. Docket Entry No.14. Defendant asserts that "the ALJ's determination that plaintiff's testimony was not credible" is supported by substantial evidence. *Id*. Specifically, Defendant argues that Plaintiff's testimony that she suffered from thyroid cancer and a ruptured disc were proven to be untrue, and that the ALJ found Plaintiff's testimony to be internally inconsistent as well as inconsistent with other medical notes and records. *Id.* Defendant additionally contends that, in asking this Court to consider the summary of her circumstances contained in her post-ALJ decision letter that "takes issue" with a number of the factual findings reached by the ALJ, Plaintiff essentially asks this Court to conduct an impermissible de novo review. *Id.*

With regard to the ALJ's credibility finding of Plaintiff's testimony, the Sixth Circuit has held that the ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference. *Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997) (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's

13

daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227); *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

The ALJ in the case at bar considered all the evidence of Record and concluded that Plaintiff's testimony was not credible. TR 27. In reaching this conclusion, the ALJ clearly articulated her reasons for according Plaintiff's testimony little weight. *Id.* The ALJ stated that she discounted Plaintiff's testimony because; 1) Plaintiff's claims were not documented by records from treating and examining sources; 2) there were several inconsistencies within her testimony; 3) Plaintiff's testimony conflicted with medical documents and the Record; and 4) Plaintiff's testimony regarding her having a ruptured disc and thyroid cancer were untrue. *Id.*

The ALJ clearly stated her reasons for discounting Plaintiff's testimony, and those reasons were supported by the evidence of Record. The ALJ's credibility determination, therefore, was proper. Plaintiff's claim fails.

**3. Consideration of Vocational Expert's Testimony and the Hypothetical Posed**

Plaintiff contends that the ALJ should have adopted the VE's opinion that Plaintiff would be unable to work given the limitations expressed by Dr. Burbank. Docket Entry No. 12.

Defendant responds that the ALJ was not required to accept the VE's responses to questions that were based on Dr. Burbank's opinions because, as has been discussed above, the ALJ found Dr. Burbank's opinions inconsistent with, and unsupported by, the Record. Docket

14

Entry No. 14. Defendant correctly argues that an "ALJ may properly rely on the VE's response to a hypothetical question if the question posed incorporated the limitations accepted as credible by the ALJ." *Id*. The Defendant further claims that since it has been previously established that "substantial evidence supports the ALJ's determination not to give significant weight to Dr. Burbank's opinions," the ALJ was not bound to accept the VE's answers to hypothetical questions based upon Dr. Burbank's opinions. *Id.*

As the Sixth Circuit has held, an ALJ is not obligated to consider a VE's response to questions based on information that the ALJ has decided is not supported by substantial evidence or is not credible. *See e.g., Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Services*, 823 F.2d 922, 927-928 (6th Cir. 1993) ("[B]ecause there was substantial evidence to the contrary, the Secretary was not bound by the opinions of the treating physicians that [Plaintiff] was totally disabled.); *Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert...but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'").

As discussed above, the ALJ properly considered and discounted Dr. Burbank's opinion. TR 26. Because the ALJ appropriately discredited Dr. Burbank's opinion, she was not obligated to rely on the VE's response to questions that were based on Dr. Burbank's assessments. Accordingly, Plaintiff's argument fails.

**4. Appeals Council Review**

Plaintiff contends that the Appeals Council, in its April 11, 2008 denial of review,

erroneously failed "to address the issues contained in the responses of the Plaintiff and her treating physician." Docket Entry No. 12. Plaintiff refers to her own letter (TR 330–335) and Dr. Burbank's October 10, 2007 letter (TR 336-337). In her letter, Plaintiff discussed, *inter alia*, her impairments, the opinions of some treating and examining sources, and Dr. Burbank' assessment of Plaintiff's condition. *Id*. Dr. Burbank's October 2007 letter contained "a detailed explanation of the Plaintiff's diseases and accompanying symptoms," a report of Plaintiff's ability to medicate flare-ups at home, a description of Plaintiff's abilities on her "good days" and "bad days," and an enumeration of several factors that would impact Plaintiff's ability to work. *Id*. Plaintiff argues that the Appeals Council failed to consider the contents of both letters. *Id*.

Defendant argues that "an Appeals Council's action denying review is unreviewable." Docket Entry No. 14, *citing Meeks v. Sec'y of Health & Human Servs.*, No. 92-6306, 1993 WL 216530, at **1 (6th Cir. June 18, 1993) (*citing* 20 CFR § 404.955). Defendant additionally asserts that Plaintiff's and Dr. Burbank's letters (TR 329-338) do not support remand because Plaintiff has failed to demonstrate that the letters are new and material, and Plaintiff has also failed to demonstrate good cause for failing to incorporate them into the Record at the administrative level. *Id.* Defendant argues that Plaintiff's and Dr. Burbank's letters "only dispute the ALJ's findings and conclusions," rather than introducing any new evidence. *Id*. Defendant argues that the Appeals Council, therefore, properly denied review. *Id*.

The Regulations state that, "The dismissal of a request for Appeals Council review is binding and not subject to further review." 20 C.F.R. § 404.972. A case may be remanded for consideration of additional evidence under the following conditions:

> The court may, on motion of the Commissioner of Social Security

16

> made for good cause shown before the Commissioner files the
> Commissioner's answer, remand the case to the Commissioner of
> Social Security for further action by the Commissioner of Social
> Security, and it may at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only upon a
> showing that there is *new evidence* which is *material* and that there
> is *good cause* for the failure to incorporate such evidence into the
> record in a prior proceeding.

42 U.S.C.A. § 405(g) (emphasis added). The Sixth Circuit has similarly ruled that a court may consider additional evidence only if it is new and material and if the claimant has demonstrated good cause for failing to submit it to the ALJ. *Hollon v. Commissioner*, 447 F.3d 477, 484-485 (6th Cir. 2006).

As an initial matter, Plaintiff's claim that the Appeals Council should have considered the letters that Plaintiff (TR 330-335) and Dr. Burbank (TR 336-337) wrote subsequent to the ALJ's ruling fails because it is contrary to the explicit language of 20 C.F.R. § 404.972. The Regulation unequivocally states that the dismissal of a request for review by the Appeals Council is "binding and not subject to further review." 20 C.F.R. § 404.972.

Moreover, the post-ALJ decision letters do not constitute new and material evidence such that remand is warranted since the letters seek to clarify and explain certain items already contained in the Record upon which the ALJ has based her decision; they do not introduce new evidence that is not contained in the Record. Accordingly, these letters discuss information that the ALJ had already considered.

The Appeals Council's decision was proper. Plaintiff's argument fails.

## IV. RECOMMENDATION

17

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

_____
E. CLIFTON KNOWLES
United States Magistrate Judge